# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2327

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota |
| Charles David Gipp, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 22, 1997

Filed:  June 11, 1998

_____

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Charles David Gipp appeals from a judgment entered upon a jury verdict in the United States District Court for the District of South Dakota[1] finding appellant guilty of seven counts (six drug trafficking offenses plus one count of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.

_____

[1] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

§ 924(c)(1)). The district court sentenced appellant to a total of 211 months imprisonment (151 months for the drug trafficking counts plus 60 months for the § 924(c)(1) count), five years supervised release, a $5,000 fine, and a special assessment of $300. Appellant raises seven issues for our consideration: (1) suppression of his April 5, 1996, statement to an FBI agent; (2) validity of a car stop made by a Montana state trooper on October 13, 1995; (3) validity of a search warrant to search his car; (4) exclusion of the testimony of his clinical psychologist; (5) sufficiency of the evidence for count 1 (conspiracy), count 3 (possession with the intent to distribute), and count 9 (the § 924(c)(1) gun count); (6) improper jury instruction; and (7) a sentencing error.

## JURISDICTION

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231; and this court's jurisdiction is found in 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

## BACKGROUND

On February 14, 1996, Mike Halfred, a 17-year-old juvenile, stole a stereo system from one of his neighbors in Eagle Butte, South Dakota. Halfred testified that about a week later he, his cousin, Sam LeBeau, and Sam's girlfriend, Myrna LeClaire, took the stolen stereo to the apartment of appellant's girlfriend, Donita Dupris, where he traded it to appellant for an ounce of marijuana. At trial Myrna LeClaire testified that, almost a month later on March 8, 1996, she told tribal detective Stephen Brings Plenty, who was investigating the theft of the stereo, about the transfer of the stereo to appellant by Halfred for marijuana, and that appellant told her that he planned to move

the stereo away from Eagle Butte. After Detective Brings Plenty's conversation with LeClaire, he reported the entire conversation to Chief Detective William Pretty Weasel.

Ten days later on March 18, 1996, Chief Detective Pretty Weasel saw appellant's car in Eagle Butte, and thereafter prepared and received a search warrant for appellant's car from a tribal judge. On the same day, Tribal Sergeant William Pretends Eagle saw, stopped, and searched appellant's car. As Sgt. Pretends Eagle entered appellant's car, he smelled the odor of marijuana. While searching the car, Sgt. Pretends Eagle found seven rolled baggies of marijuana which were concealed in the gear shift compartment of the car.

On April 5, 1996, appellant initiated and requested an interview with FBI Special Agent Joe Weir. Prior to questioning appellant, Weir advised him that he was free to end the interview at any time and that he was not under arrest. Weir testified that he made no promises or threats to appellant and noted that appellant did not appear to be under the influence of any drugs or alcohol. During the interview, appellant admitted that he had traded one ounce of marijuana to Halfred for the stolen stereo. He also admitted that the seven bags of marijuana found in his car were intended for resale. Appellant further told Weir that from May 1995 to October 1995, on nine different occasions, he had received 10 to 12 pounds of marijuana, one and one-half pounds of cocaine, three pounds of methamphetamine, and 4-5 grams of heroin from a cousin, Ann Solano, in Salem, Oregon. He told Weir that in October 1996, while on his way to make another drug deal with Solano in Montana, he had been stopped and arrested. According to appellant, the arresting officer found in appellant's possession $6500 in cash, and small amounts of cocaine, methamphetamine, and marijuana. Prior to the Montana stop, the arresting officer had seen appellant stop twice on the roadside. While appellant was stopped on the roadside, the officer pulled along side appellant's car to make what he called a "welfare check" of the vehicle. The officer testified that, when appellant got out of his car, he could smell burnt marijuana and that he saw

marijuana roaches inside of appellant's car. Additional facts, statements and details are set forth in the opinion.

DISCUSSION

Motion to Suppress Statement

Appellant's first argument is that the district court erred in denying his motion to suppress his April 1996 statement made to FBI Agent Weir. "We review the question of whether a confession is voluntary as a question of law subject to de novo consideration. However, we review determination of historical facts underlying this legal conclusion under the clearly erroneous standard." United States v. Hornbeck, 118 F.3d 615, 618 (8th Cir. 1997) (citation omitted); see United States v. Cody, 114 F.3d 772 (8th Cir. 1997). The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was "extracted by threats, violence, or direct or indirect promises, such that [a person's] will is overborne and his [or her] capacity for self-determination critically impaired." United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995), citing Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (internal citation omitted). In making this determination, we look and inquire into "the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v. Kilgore, 58 F.3d at 353.

Here, appellant argues that his confession regarding drug deals from May 1995 to March 1996 was involuntary because law enforcement officers conducting the interview "psychologically coerced" him. According to appellant, this psychological coercion occurred when Weir told him that his level of drug involvement did not qualify him to enter into the federal witness protection program. Because appellant testified neither at any of the suppression hearings nor at trial, the district court found there was no direct evidence concerning the psychological coercion. The record did contain

–4–

evidence that after appellant's cooperation with the Montana authorities, he received a telephone threat from his cousin, Ann Solano, or her friends. The record also reveals, however, that even after this alleged threat, the district court found that appellant continued to maintain a high profile in the community by driving his car up and down Main Street in Eagle Butte and patronizing bars and house parties. In considering this issue, the district court noted that appellant did not act in any manner like an individual who was seriously afraid for his life.

We hold that appellant's statements on April 5, 1996, were voluntarily made. The statements made were given after appellant himself initiated contact with the law enforcement authorities. Prior to the interview, Weir advised appellant that he was not in custody or under arrest and that he could stop the interview at any time. Weir also testified that appellant did not appear to be under the influence of any drugs or alcohol and that he neither threatened nor promised appellant anything. We further note that Weir allowed appellant to leave the interview room twice to use the restroom and permitted him to leave the station after the interview. Moreover, Weir did not arrest appellant that day. In conclusion, we hold that appellant failed to establish that his statements were involuntary or that his will was overborne or that his capacity for self determination was critically impaired by Weir's truthful statement that he did not qualify for the witness protection program. Furthermore, the district court's finding that there was no evidence that the law enforcement officers conducting the interview misrepresented anything to appellant is not clearly erroneous.

Montana Investigatory Stop

Appellant next argues that the district court erred in denying his motion to suppress evidence and statements obtained following the Montana stop in violation of his Fourth Amendment rights against unreasonable searches and seizures. United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997); United States v. Jefferson, 906

F.2d 346, 348 (8th Cir. 1990) (citing <u>United States v. Archer</u>, 840 F.2d 567, 571 (8th Cir.), <u>cert. denied</u>, 488 U.S. 941 (1988)).

On October 13, 1995, Montana highway patrol officer Chris Costello was patrolling I-90 between Cardwell and Butte, Montana.  At approximately 7:45 p.m., he observed appellant's car parked on a frontage road in front of a fence that led into private property.  He noted that the headlights were off, the dome lights on, and that there were some occupants in the vehicle.  Trooper Costello continued on to Cardwell and on his return trip to Butte, he saw appellant's car again parked at the same location.  Officer Costello testified that he approached appellant's car to see if the car was having any problems, conduct which he described as a "welfare check."  At this time Officer Costello did not suspect any criminal activity and appellant's car had sufficient room to back up and leave the scene.  Appellant did not attempt to leave but instead got out of the car as Officer Costello approached.  When appellant was close to him, Officer Costello testified that he smelled the odor of burnt marijuana on appellant's clothes.  Thereafter, he asked appellant for his driver's license and vehicle registration.  Appellant produced a driver's license but told Officer Costello that he had no registration for the car.  He said, however, that he thought he had a bill of sale in the car.  After appellant entered the car to search for his proof of ownership papers, Officer Costello stood in the car doorway and observed several burnt roaches in the center console between the seats.  He also testified that he smelled the odor of burnt marijuana emanating from the inside of the car.  Thereafter, Officer Costello requested appellant to accompany him back to his patrol car.  He stated that he advised appellant about his observation and the smell of burnt marijuana and asked permission to search appellant's car.  Officer Costello further testified that he specifically advised appellant that he did not have to consent.  After a little more discussion, appellant gave oral consent to search his car.  During the consensual search Officer Costello found 5 burnt roaches between the console, a rubber hose and a hypodermic needle between the console and the driver's seat, a spoon with burnt white residue under the seat, and a plastic bag containing $6500 in cash and 3 small baggies of white powder, which was

later determined to be cocaine and methamphetamine. Following the search Officer Costello arrested appellant.

Appellant contends that Officer Costello's contact with him was impermissible because the officer did not have a reasonable basis for suspecting criminal behavior. Thus, appellant argues that the stop was a violation of Terry v. Ohio, 392 U.S. 1 (1968). We note first that Officer Costello did not stop or detain appellant along the highway until he smelled the odor of burnt marijuana. Furthermore, at the time that Officer Costello approached appellant's car, he was simply making what the government characterized as a "welfare check" on the occupants of a parked vehicle as was his duty and responsibility as a highway patrol officer. When Officer Costello approached the car, appellant got out of his car and initiated the first contact with Officer Costello, and it was that contact that resulted in probable cause.

As this court stated in United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989),

[t]he Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search. See Johnson v. United States, 333 U.S. 10, 13 (1948) (observing that the odor of an illegal substance testified to by a qualified affiant "might very well be found to be evidence of a most persuasive character"). Many lower courts have relied primarily on the odor of marijuana in determining that probable cause existed for a warrantless automobile search. See , e.g., United States v. Reed, 882 F.2d [147,] 149 [(5th Cir. 1989)] (border patrol had probable cause after he detected burnt marijuana through a rolled-down window and driver appeared nervous); United States v. Loucks, 806 F.2d 208 (10th Cir. 1986) (probable cause existed after automobile was stopped for speeding, driver was "reeking" of marijuana as he sat in patrol car, and officer smelled what he thought was still-burning marijuana in the detained vehicle); United States v. Haley, 669 F.2d 201 (4th Cir.) (patrolman had probable cause after he stopped speeding automobile, smelled intense odor of marijuana emanating from driver's body while he sat in police cruiser, and also smelled strong

marijuana odor when passenger rolled down window of the stopped vehicle), cert. denied, 457 U.S. 1117 (1982).

We hold that Officer Costello's conduct in approaching appellant's parked car was clearly not impermissible and, after he smelled burnt marijuana emanating from appellant's clothes and the interior of appellant's car, he had a "particularized and objective basis" for suspecting appellant was or had recently engaged in criminal activity, that is, using marijuana. See United States v. Cortez, 449 U.S. 411, 417 (1981). Therefore, the contact between appellant and Officer Costello was not an unlawful Terry stop and the district court did not err in denying appellant's motion to suppress evidence and statements obtained as a result of the Montana investigatory stop.

Appellant also argues his consent to search was not voluntary because he was not informed that he could refuse to consent and because he was under the influence of drugs. He also argues that Officer Costello's approach exacerbated his post-traumatic stress disorder, further impairing his judgment. A valid consent to search is an exception to the Fourth Amendment warrant requirement of the United States Constitution. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); United States v. Frazier, 560 F.2d 884, 888-89 (8th Cir. 1977), cert. denied, 435 U.S. 968 (1978). Whether voluntary consent to search has been given is a question for the trial court based on the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. at 226. In United States v. Chaidez, 906 F.2d 377, 380-81 (8th Cir. 1990) (citing Schneckloth v. Bustamonte, 412 U.S. at 226), this court listed several factors for a district court to consider when determining the voluntariness of consent, including "both the characteristics of the accused and the details of the interrogation."

> The following characteristics of persons giving consent are relevant when assessing the voluntariness of their consent: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or

under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their <u>Miranda</u> rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

In examining the environment in which consent was given, courts should ask whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

<u>Id.</u> at 381 (citations omitted).

Here, the evidence in the record shows that shortly after Officer Costello came into contact with appellant, he smelled the odor of burnt marijuana and also observed what appeared to be several roaches in plain view inside appellant's car. Officer Costello testified that he could smell burnt marijuana in appellant's car and on his person. He also told appellant that he had observed five burnt marijuana cigarettes or roaches inside the vehicle and asked him at that time if he could search his vehicle. Officer Costello testified that he told appellant he was not required to consent to any search. Appellant responded that he had a set of numchuks in his vehicle; however, Officer Costello told appellant that numchuks were not illegal in Montana and following this exchange appellant gave oral consent to Officer Costello to search his car. Appellant later signed two written consents to search his car. From this exchange we note that Officer Costello made no threats, promises or misrepresentations, or any psychological coercion to gain appellant's consent. Additionally, although appellant was by then detained, the detention had been very short, and it had occurred on a public thoroughfare, and appellant never objected to the search.

Appellant argues, however, that he could not voluntarily consent because he was under the influence of drugs. In United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986), this court noted:

> We recognize that Rambo was possibly under the influence of a narcotic at the time of his arrest, . . . and was highly disturbed. However, the mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary. See United States v. Gay, 774 F.2d 368, 377 (10th Cir. 1985); United States v. Elrod, 441 F.2d 353, 355 (5th Cir. 1971). In each case, "[t]he question is one of mental awareness so that the act of consent was the consensual act of one who knew what he [or she] was doing and had a reasonable appreciation of the nature and significance of his [or her] actions." [United States v.] Elrod, 441 F.2d at 355.

Both Officer Costello and Montana drug task force agent Dan Doyle testified that appellant answered all of their questions intelligently, behaved rationally, and, except for some nervous behavior, appeared normal. Just prior to giving consent to the search, appellant had asked a rational question about the legality of numchuks in Montana and had apparently recently been driving his car. In his taped statement appellant gave a detailed summary of his drug activities and recalled numerous facts about past events. Furthermore, the main basis for appellant's claim that he could not give voluntary consent to a search of his car or make a statement was testimony from clinical psychologist Dr. Dame. In preliminary questioning at the November 15 suppression hearing, Dr. Dame admitted that, without knowing the quantity or purity of the drug taken by appellant, it was impossible to determine the drug's effect on his judgment. In light of the undisputed evidence that appellant appeared rational in almost all respects and was clearly attempting to cooperate with the Montana authorities, we hold appellant voluntarily consented to the search of his car by the Montana officers.

<u>Tribal Search Warrant</u>

Appellant next attacks the tribal search warrant issued on March 18, 1996, authorizing the search of his car for a stolen stereo. The officers found 7 plastic bags of marijuana in the car. Appellant argues there was no probable cause because the information in the search warrant affidavit was stale. He also argues there was no probable cause to believe the stereo would be found in his car.

A district court's determination made in a suppression hearing is reviewed on appeal under the clearly erroneous standard. The district court's findings will be affirmed unless they are not supported by substantial evidence or reflect an erroneous view of the applicable law, or we are left with a definite and firm conviction that a mistake has been made. <u>United States v. Eisenberg</u>, 807 F.2d 1446, 1449-50 (8th Cir. 1986); <u>see also</u> <u>United States v. Porter</u>, 859 F.2d 83, 84 (8th Cir. 1988) (per curiam); <u>United States v. Hernandez</u>, 854 F.2d 295, 297 (8th Cir. 1988) (historical facts reviewed under clearly erroneous standard; whether Fourth Amendment violation occurred reviewed de novo). This court has recognized that evidence seized pursuant to a tribal search warrant may be used in a federal criminal prosecution. <u>See United States v. MacConnell</u>, 868 F.2d 281, 283-84 (8th Cir. 1989). A reviewing court must simply apply the federal standard for probable cause as set forth in <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983) (quoting <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Therefore, we review the sufficiency of the search warrant affidavit under the Illinois v. Gates standard.

First, we note that the evidence established that, during the investigation of the theft of the stereo, Myrna LeClaire told tribal detective Stephen Brings Plenty that on February 14, 1996, she had helped Mike Halfred and Sam LeBeau transport a stolen stereo system to Donita Dupris's apartment where appellant was staying. At the apartment, appellant told them that he planned to take the stereo back to Fort Yates, North Dakota. We note that appellant did not say when he intended to move the stereo. Appellant's only known method of transportation at that time was his dark blue 1976 Pontiac Firebird.

About a month later, on March 18, 1996, appellant's car, which had been out of the area until then, was seen in Eagle Butte, South Dakota. It was at this time that Chief Detective Pretty Weasel, who had reviewed LeClaire's interview statement, prepared an affidavit and an application for a tribal search warrant for appellant's car. Probable cause exists when the facts and circumstances within an officer's knowledge are sufficiently trustworthy to warrant a person of reasonable caution to believe that a crime has been committed and that seizable property from that crime may be located at a particular place or on a person to be searched. See Carroll v. United States, 267 U.S. 132 (1925). Timeliness must be determined in the circumstances of each case. Information four months old may be timely, United States v. Diecidue, 603 F.2d 535, 560 (5th Cir. 1979), cert. denied, 445 U.S. 946 (1980); or information six months old may be timely when combined with other information, United States v. Williams, 603 F.2d 1168, 1172 n.4 (5th Cir. 1979), cert. denied, 444 U.S. 1024 (1980). In the present case, appellant left the Cheyenne River Sioux reservation in February 1996 and his car was not seen again until the day the search warrant was issued. Nothing in LeClaire's statement indicated that appellant was planning to move the stereo immediately, only that he did plan to transport the stereo to Fort Yates. We hold that it was not unreasonable to believe that at appellant's next appearance on the Cheyenne River

Sioux reservation he may have had components of the stolen stereo system in his car even though the complete stereo system itself may not have been present. Thus, we hold that the information in the search warrant affidavit was not stale, particularly when combined with other evidence.

Finally, even assuming for purposes of analysis that the information in the search warrant affidavit was stale and there was no probable cause, the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984), recognized that where law enforcement officers act in reasonable reliance upon a search warrant, issued by a judge or magistrate, the evidence obtained will not be suppressed even if the warrant is later found to be improperly issued. This good faith exception will not apply if a defendant makes a substantial showing that the affiant intentionally or recklessly misstated or omitted facts. Franks v. Delaware, 438 U.S. 154 (1978). The defendant bears the burden of proving by a preponderance of the evidence that the affiant intentionally or recklessly included false statements in a warrant affidavit. United States v. Garcia, 785 F.2d 214, 222 (8th Cir.), cert. denied, 475 U.S. 1143 (1986).

In the present case, the district court held:

> There is no evidence [Chief Detective Pretty Weasel] did not act in good faith. Counsel for defendant argues that the informant had indicated defendant had left the area with the stereo. This is not correct, the informant having stated on March 8, 1996, that defendant was going to take it to North Dakota or to another location in South Dakota. The last [LeClaire] knew, the stereo was in the home of defendant's girlfriend and he had not picked it up at that time. This is despite the fact that the stereo was stolen on February 14, 1996.

United States v. Gipp, No. CR96-30056, slip op. at 3 (D.S.D. Dec. 11, 1996) (order denying motions to suppress). We hold that there was probable cause to search

appellant's car for the stolen stereo on March 18, 1996, and consequently the seven plastic bags of marijuana seized in that search were properly admitted at trial.

Testimony of Expert Witness

Appellant next argues the district court abused its discretion in excluding the testimony of an expert witness, clinical psychologist Dr. Frank Dame. According to the offer of proof, Dr. Dame would have testified that, as a result of cocaine dependence and post-traumatic stress disorder, appellant's October 1995 statements were not voluntary and and that he lacked the specific intent to engage in drug-trafficking. "Admission or exclusion of expert testimony is a matter within the sound discretion of the district court." United States v. Purham, 725 F.2d 450, 453 (8th Cir. 1984). We hold the district court acted well within its discretion in excluding as speculative Dr. Dame's testimony about the psychological effect of cocaine use on appellant's judgment. As noted above, Dr. Dame did not know how much cocaine appellant had used before his arrest in October 1995. The district court did not exclude Dr. Dame's testimony about post-traumatic stress disorder; appellant could have presented such testimony to the jury. Cf. United States v. Cameron, 907 F.2d 1051, 1063-67 (11th Cir. 1990) (noting psychiatric evidence to negate specific intent is admissible). However, we note that, according to the offer of proof, Dr. Dame would not have testified that post-traumatic stress disorder affected appellant's intent to traffic in drugs.

Sufficiency of the Evidence

Appellant contends that there is insufficient evidence to convict him on count 1 for conspiracy. On appellate review of the sufficiency of the evidence, the court must view the evidence in the light most favorable to the verdict rendered. Glasser v. United States, 315 U.S. 60, 80 (1942). We must accept as established any and all reasonable inferences from the evidence that tend to support the jury's verdict. United States v.

Overshon, 494 F.2d 894, 896 (8th Cir.), cert. denied, 419 U.S. 853, 878 (1974). "[I]t is not necessary that the evidence exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. Shahane, 517 F.2d 1173, 1177 (8th Cir.) (citing Holland v. United States, 348 U.S. 121 (1954)), cert. denied, 423 U.S. 893 (1975). Furthermore, because circumstantial evidence is intrinsically as probative as direct evidence, Holland v. United States, 348 U.S. at 140, the same standard applies where a conviction rests entirely on circumstantial evidence. United States v. Carlson, 547 F.2d 1346, 1360 (8th Cir. 1976), cert. denied, 431 U.S. 914 (1977).

The evidence showed that, between May 1995 and March 1996, appellant received from Ann Solano, his source of supply in Salem, Oregon, 10-12 pounds of marijuana, one and one-half pounds of cocaine, three pounds of methamphetamine, and 4-5 grams of heroin. Appellant sold almost the entire amount of heroin and methamphetamine, used some of the cocaine and marijuana, but also sold quantities of cocaine and most of the marijuana in four communities using five different named individuals. The evidence also showed that Ann Solano would generally "front" appellant the drugs and he would in turn "front" them to next level of distributors, collecting the money later and wiring the proceeds to Ann Solano in Oregon. Wire money orders, sent by appellant to Ann Solano in June, July, and August of 1995, were presented to the jury. After appellant's arrest in Montana, he cooperated with the police and made a controlled buy involving Ann Solano. Upon her arrest, the police seized 26.5 ounces of marijuana, 7.1 ounces of cocaine, and 17.5 ounces of methamphetamine. Appellant's girlfriend, Donita Dupris, testified that she had traveled with him to Montana to obtain drugs and that after their return she had helped repackage the drugs for resale. Dupris also testified that appellant kept a drug log in a daily planner. This daily planner was introduced into evidence and listed nineteen names followed by dollar amounts. Appellant admitted that the exhibit was a record of his drug transactions. Finally, both Sam Lebeau and James Giroux testified that appellant "fronted" them marijuana to sell to their friends, and Mike Halfred testified

that he saw appellant weighing marijuana while appellant bragged about his drug dealings.

To convict appellant of conspiracy to distribute drugs, the jury had only to find that an agreement existed between appellant and others to distribute drugs. "[W]e have held that 'evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute.'" United States v. Miller, 91 F.3d 1160, 1162 (8th Cir. 1996) (citation omitted). Here, the evidence showed that appellant sold resale quantities of drugs and entered into an agreement with Ann Solano and others to unlawfully distribute controlled substances in four different communities in North Dakota and South Dakota and that he knowingly involved himself in this endeavor. This evidence was sufficient to convict appellant of conspiracy.

Appellant also argues that there was insufficient evidence to support a conviction for possession with intent to distribute cocaine (count 3). We disagree. The evidence showed that appellant received from his cousin, Ann Solano, approximately one and one-half ounces of cocaine from May 1995 to October 13, 1995. Appellant used some of the cocaine and he also admitted selling some of the cocaine to others. In addition, Sam LeBeau testified that he saw appellant with five small plastic bags of cocaine that appellant advised him sold for $50 a gram. Furthermore, there was independent corroboration in the record that appellant wired money to Ann Solano for the purchase of drugs including cocaine.

Appellant also argues there was insufficient evidence for a jury to find him guilty of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (count 9). In Bailey v. United States, 516 U.S. 137, 143-44, 148 (1995), the Supreme Court held that to support a conviction under the use prong of § 924(c), the government must show active employment of the firearm, such as brandishing, displaying, striking, firing, or attempting to fire the weapon, and rejected the mere presence or availability definition of "use."

In the present case, Sam LeBeau and James Giroux testified that after the theft of the stereo, they were questioned by the tribal police. Afterwards, they had an encounter with appellant at the "wall" in Eagle Butte, South Dakota.[2] Both of them testified that appellant was next to them in his Bronco and asked them if they had "ratted" on him about the stereo-for-drugs transaction. After replying "no," both of them observed appellant lean down and grab the butt of a handgun while he advised them "Don't f___ with me. I know where your head lays." In our opinion, this encounter involved the active employment of a firearm within the meaning of Bailey v. United States. Not only did appellant display the firearm, he displayed it while threatening the boys with retaliation. The issue thus becomes whether appellant used the handgun "during and in relation to" a drug trafficking crime. Does the display and the implied threat in the present case reasonably and fairly fit within Bailey v. United States? Did appellant display the handgun "during and in relation to a drug trafficking crime"? Appellant did not display the handgun "during" the stereo-for-drugs transaction itself. However, we think appellant actively employed a firearm "during and in relation" to a drug trafficking crime because appellant displayed the handgun in order to protect his drug trafficking activity. Firearms are frequently used to protect drugs and drug profits. See United States v. Keene, 915 F.2d 1164, 1168 (8th Cir. 1990), cert. denied, 498 U.S. 1102 (1991); United States v. Malin, 908 F.2d 163, 168 (7th Cir.), cert. denied, 498 U.S. 991 (1990); United States v. Henry, 878 F.2d 937, 944 (6th Cir. 1989); United States v. Robinson, 857 F.2d 1006, 1010 (5th Cir. 1988); United States v. Matra, 841 F.2d 837, 842 (8th Cir. 1988). Firearms are also often used to intimidate drug customers, distributors and competitors. See United States v. Smith, 962 F.2d 923, 931 (9th Cir. 1992); United States v. Moore, 919 F.2d 1471, 1475 (10th Cir. 1990); United States v. Coburn, 876 F.2d 372, 375 (5th Cir. 1989). We hold that appellant's display of a firearm occurred during and in relation to a drug

---

[2]The "wall" is a retaining wall on Main Street in Eagle Butte, South Dakota, where youngsters hang out.

trafficking crime, that is, in order to protect his drug trafficking activity by intimidating his customers and distributors.

Jury Instruction

Next, appellant argues that the district court improperly instructed the jury regarding the elements necessary to convict him of illegally using or carrying a firearm during and in relation to a drug trafficking crime. First, we note that appellant did not object to this instruction (No. 27) and he proposed no further instruction regarding the § 924(c) count. When a defendant fails to object to a proposed instruction, this court may reverse only upon a finding of plain error. United States v. Caldwell, 97 F.3d 1063, 1068 (8th Cir. 1996).

Our review of instruction No. 27 indicates that it required two elements to prove the charge ((1) commission of a drug trafficking crime and (2) use or carrying a firearm during and in relation to that crime) and required the government to prove each element beyond a reasonable doubt. We hold the instruction was not plain error. See United States v. Steward, 16 F.3d 317, 320 (9th Cir. 1994) (pre-Bailey decision holding not plain error to instruct jury that 18 U.S.C. § 924(c) requires only that defendant "knowingly used or carried a handgun while committing the [drug] crime"). We think the present case is distinguishable from Caldwell. In Caldwell the instruction defined the phrase "used a firearm" as "having a firearm available to aid in the commission of the crime" and thus was erroneous in light of Bailey's definition of "use" to require active employment. 97 F.3d at 1068 (instruction did not separately define "carry" and did not refer to terms as having separate meanings). In comparison, the instruction in the present case did not define the terms "use" or "carry" in terms of "mere presence and ready availability" (in fact, the instruction did not define the terms at all) and thus did not contain the same kind of Bailey error. In addition, in Caldwell the government conceded on appeal that the record did not contain evidence of the defendant's use, that is, active employment, of the firearm. Id. at 1069 (evidence was sufficient to support

conviction under "carry" prong). However, as discussed above, the record in the present case contained evidence sufficient to prove appellant either "used" the handgun by displaying it or "carried" the handgun by transporting it in the passenger compartment of his car or both. See id. (citing cases defining "carry" to include transporting firearm in passenger compartment of vehicle).

Sentencing

Finally, appellant argues that the district court erred in determining the amount of drugs chargeable to him for purposes of applying the relevant sentencing guidelines. We note that "[d]efendants who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994). A district court's decision on the amount of drugs for which a defendant is to be held accountable is a finding of fact that must be accepted by a court of appeals unless clearly erroneous. United States v. Alexander, 982 F.2d 262, 267 (8th Cir. 1992); see also United States v. McMurray, 34 F.3d 1405, 1415 (8th Cir. 1994), cert. denied, 513 U.S. 1179 (1995). We have reviewed the record and hold that the district court's determination of the amounts of drugs to attribute to appellant was not clearly erroneous.

For the reasons set out herein, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.