# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

**NO. 99-2158NE**

_____

UNITED STATES OF AMERICA,      *
        *
     Appellee,      *
        *    On Appeal from the United
v.         *    States District Court
        *    for the District of Nebraska
RUDY A. GARCIA,      *
        *
     Appellant.      *

_____

Submitted: November 18, 1999
Filed: December 17, 1999

_____

Before BEAM, FLOYD R. GIBSON, and WELLFORD,[1] Circuit Judges.

_____

HARRY W. WELLFORD, Circuit Judge.

Defendant Rudy Garcia has appealed from his conviction for conspiracy to distribute methamphetamine, as charged, in violation of 21 U.S.C. § 846. The basis of his appeal is the overruling by the district court of his motion to suppress any statement made by him, or evidence seized from him, as a consequence of his encounter with law enforcement officers in the dead of night in April of 1997 at an Omaha apartment building.

_____

[1] The Hon. Harry W. Wellford, United States Circuit Judge for the Sixth Circuit, sitting by designation.

We recite the substance of essential findings made by the magistrate judge, ratified by the district court, after a suppression hearing. We conclude that these findings are supported by the record and, for the most part, they are essentially uncontested. The parties do dispute the conclusions to be drawn from these basic facts.

A known informant, Larry Barry, advised an experienced narcotics unit police officer, Brian Bogdanoff, of a pending substantial drug transaction in Omaha with one Felipe Rodriguez on April 1, 1997. Rodriguez advised Barry that his "people" would have cocaine at Barry's lounge to exchange for the agreed price of $20,000 (provided by police department funds). Other Omaha police officers maintained surveillance of Rodriguez. As time for consummation of the anticipated drug deal approached, Rodriguez met with three other Hispanic males. One of them went to the Cross Winds Apartment complex in Omaha and entered the apartment before returning to meet again with Rodriguez. Barry then met with Rodriguez and one of the other men who had gone to the apartment in a lounge, the appointed place for the drug transaction.

Rodriguez produced packages containing two pounds of contraband;[2] he indicated it was a part of a five pound shipment. Rodriguez and his companion were then arrested. Later, the officer returned to the Cross Winds Apartments to determine which unit or units were being utilized by Rodriguez and his associates for suspected drug transactions. The police learned that two Cross Winds units had been occupied by the four suspects, and they located two of them at the site with incriminating evidence in their possession. The officers, with permission, checked out apartment number six and found substantial evidence, including weapons, indicating drug trafficking. The officers found the other apartment, number nine, apparently locked and then unoccupied. They had found on one of the four persons involved, Valeria Hernandez, a key to this apartment, the scene of the subsequent encounter with defendant Garcia. A drug detection canine sniffed at the door of

---

[2] Methamphetamine, not the expected cocaine.

apartment nine, as well as the outside of a van parked outside, the keys to which Hernandez also possessed, and the indications for presence of drugs was positive in both instances. Bogdanoff then proceeded to take steps to obtain a search warrant for the apartment and the van.

Police officers, Quaites and Sorys, maintaining surveillance at the scene while awaiting the search warrant, then late at night, observed Garcia approach and walk toward apartment nine with a duffel bag and a key to the apartment in hand. He "appeared to be about to enter [the] apartment No. 9." The officers, attired in plain clothes, stopped Garcia and told him this apartment "was being secured" and that he could not enter. The officers displayed neither their badges nor any weapon. Upon questioning, Garcia told the officers that he did not live in the apartment and "he was just in Omaha to pick up a car to take it back to California for a person named 'Vito,'" who had furnished him the apartment key.

We find no error in the district court's conclusion that the initial encounter and discussion with Garcia outside the apartment was consensual. The parties argue about the application in this case of *Terry v. Ohio*, 392 U.S. 1, 20-27 (1968), often cited in this type of police contact with a suspect. Garcia argues that questioning and subsequent seizure of the apartment key took place after a stop or after he was effectually taken into custody. The issue under *Terry* is whether police questioning at the scene had become "so intimidating, threatening or coercive that a reasonable person [Garcia] would not have believed himself free to leave." *United States v. McKines*, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc). That officer Quaites may subjectively have felt that he considered Garcia detained is not controlling. We examine the facts and circumstances at the time from Garcia's perspective as a reasonable person being questioned.

"So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*,

501 U.S. 429, 434 (1991) (quotations omitted); *United States v. Pena-Saiz*, 161 F.3d 1175, 1177 (8th Cir. 1998). Neither officer had his holster showing; both were in plain clothes; neither touched Garcia or blocked his way when telling him he could not enter the apartment; all three were in an open, public hallway; no one told Garcia he could not leave; and no one alleged that the officers spoke in harsh tones, raised their voices, or crowded Garcia. The facts indicate a lack of intimidation or threats.

The district court determined that after the initial exchange, the officers seized Garcia for the purposes of an investigation supported by reasonable, articulable suspicion. Based on law enforcement knowledge of the involvement of apartment nine, which Garcia was attempting to enter, their awareness that the remaining three kilos of drugs might be stored there, and the probable cause supporting the pending search warrant for the apartment, the time of night and Garcia's possession of a duffel bag, the officers had a reasonable, articulable suspicion that Garcia may have committed, was committing, or would commit a crime. We find no error in this conclusion regardless of how close Garcia was to the door and whether he had the key in his pocket or in his hand as found by the magistrate judge.[3] Under *Terry*, the officers' questioning Garcia as to how he obtained a key to the apartment and his reasons for attempting to enter the apartment were supported by a reasonable, articulable suspicion that Garcia was involved in the drug transaction that had occurred earlier that evening.

"[I]t cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment." *Schneckloth v. Bustamonte*, 412 U.S. 218, 243 (1973). "One's consent to a search is voluntary if it results from 'an essentially free and unconstrained choice' rather than from 'duress or coercion'" and "depends upon the totality of the circumstances." *United States v. Sanchez*, 156

---

[3] The district court made no finding on the location of the key.

F.3d 875, 878 (8th Cir. 1998) (quoting *United States v. Galvan-Muro*, 141 F.3d 904, 907 (8th Cir. 1998)).

We consider the particular "characteristics" of Garcia and the "environment" in which the purported consent was given. *United States v. Gipp*, 147 F.3d 680, 685-86 (8th Cir. 1998). *See also United States v. Chaidez*, 906 F.2d 377, 380-81 (8th Cir. 1990). Garcia was about twenty-five years old; of average intelligence, according to his attorney; was not intoxicated or under the influence of drugs; was questioned for only a few minutes and detained for a little over two hours; was not threatened, physically intimidated, or punished by the police; was in a public place; and stood by silently while the search took place.

When the officer spoke to Garcia in English, he replied, without hesitation and without inquiry, that a search of his person was no problem and said "yes" to a search of his duffel bag. Under somewhat similar circumstances, this court affirmed the district court's finding of consent and specifically rejected defendant's allegations that he did not understand English and that the officers "knew or should have known of this language barrier, and that this barrier vitiated [his] consent to the luggage search," in *Sanchez*. 156 F.3d at 877, 878; *see also Galvan-Muro*, 141 F.3d at 907.

In sum, we affirm the conclusion that until the police handcuffed Garcia, what took place between them was consensual. There was no requirement for a *Miranda*[4] warning.

We conclude, moreover, that there was a reasonable basis for arrest when the officers took Garcia into custody at the scene when they searched the apartment and found further evidence of drug activity. "Finally, whether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual. . . . If

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

No. 99-2158NE
*United States v. Garcia*

indeed [Garcia] did not consent to the [search of his person and bag], [the officer] reasonably believed otherwise." *Sanchez*, 156 F.3d at 878. There was no "evidence of duress, intimidation, or over-reaching by the officers," *id.*; the officers did not touch him until arresting him after the search. *See Galvan-Muro*, 141 F.3d at 907; *Schneckloth v. Bustamonte*, 412 U.S. 218, 247 (1973) ("In this case, there is no evidence of any inherently coercive tactics--either from the nature of the police questioning or the environment in which it took place.").

Garcia argues that the police unnecessarily detained him after they found on him only an apartment key and an airline ticket showing his arrival within the hour, and he points out at that time the police had obtained no search warrant. But "probable cause only requires 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)).

Under the totality of the circumstances, including the findings of the district court, supported by the evidence in this case, we conclude that no error has been demonstrated. Accordingly, we **AFFIRM** the decision of the district court and the denial of Garcia's motion to suppress.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT