# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3299

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Donald Reginald Richards, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 2010
Filed: July 29, 2010

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Donald Richards entered a conditional plea of guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 90 months' imprisonment. On appeal, Richards contends that the district court should have granted his motion to suppress evidence. We affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Janie S. Mayeron, United States Magistrate Judge for the District of Minnesota.

I.

On December 2, 2008, Richards boarded a bus in Des Moines, Iowa, to travel to St. Cloud, Minnesota, to visit his family. When the bus stopped at the Minneapolis airport, four officers boarded the bus. Sergeant Bill Stevens approached Richards and asked him a few questions about his travel plans. Richards declined Stevens' request to search his luggage. Shortly thereafter, Detective Mari Askerooth approached Richards and asked him for identification, which he provided. Askerooth called police dispatch and determined that Richards had an extraditable felony warrant. Askerooth and Stevens arrested Richards and seized his luggage. A subsequent search of his luggage revealed a loaded handgun.

Richards' motion to suppress argued that (1) the stop, seizure, and detention violated the Fourth Amendment, (2) the discovery of the handgun was the result of an illegal search and seizure, and (3) the arrest was the result of an illegal seizure. At the suppression hearing, Stevens described the protocol that he and the other officers were following on the day that they arrested Richards. The four plain-clothes officers were seeking to interdict contraband, utilizing consensual encounters with bus passengers. They had singled out this particular bus route because it began on the Texas-Mexico border and was a known route for transportation of narcotics. Stevens and Askerooth boarded the bus, headed to the rear of the bus, and began speaking with passengers. Meanwhile, the other two officers stayed near the front of the bus to act as "spotters," looking for any signs of danger. Stevens testified that the officers did not block the aisle and that their service weapons were concealed beneath their shirts.

Stevens testified that as he approached Richards he introduced himself as a police officer, showed his police identification, and said that Richards was not under arrest. While speaking with Richards, Stevens sat in the seat across the aisle from him. According to Stevens, the protocol that he was following involved taking special care to ensure that none of the officers blocked the aisle such that passengers would

not feel free to leave if they so desired. Stevens asked Richards if he minded answering a few questions, and Richards replied that he did not mind. In a casual and friendly demeanor, Stevens asked Richards about his travel itinerary and to see his bus ticket. Stevens then told Richards that he was looking for people transporting weapons, drugs or large amounts of cash and asked Richards if he had any of those items. Richards responded no. Stevens then asked Richards if he minded being searched. Richards responded by saying, "Yeah, I mind because I didn't do anything wrong." At that point, Stevens terminated the encounter and began speaking to another passenger.

Askerooth testified as to her observations of the interaction between Stevens and Richards and her own subsequent interaction with Richards. While Stevens was talking to Richards, Askerooth was a few feet away interacting with another passenger. She testified that Richards appeared to be very nervous during the interaction with Stevens, looking repeatedly at both her and Stevens, shaking, sweating, and acting suspiciously. After Stevens had left Richards, Askerooth approached him, identified herself as a police officer and displayed her credentials. In a friendly tone, she then asked him about why he was shaking, to which Richards replied that he had a nervous condition. Askerooth asked Richards if she could see his identification, and he complied with her request. Askerooth testified that Richards was not free to leave while his identification was being verified and that she felt that there would have been cause to detain him had he not complied with her request. The subsequent check of police records indicated that Richards had an outstanding warrant, whereupon Askerooth placed him under arrest.

Special Agent Hamblen testified as to his observations from the front of the bus, indicating that the officers were not blocking the aisle. Hamblen's attention was drawn to Richards because Richards was feigning sleep when the officers boarded the bus. According to Hamblen, it is very unusual for passengers to be asleep when the officers board the bus, given the noise involved. Richards appeared "extremely

nervous" and his hands were shaking visibly. From Hamblen's vantage point, the interaction between Stevens and Richards "seemed like it was a friendly conversation."

The magistrate judge recommended that Richards' motion to suppress be denied, concluding that (1) Richards' encounter with Askerooth was consensual and thus not a seizure for the purposes of the Fourth Amendment; (2) even if it was not consensual, Askerooth had reasonable suspicion to request Richards' identification; and (3) all statements and evidence should be admitted. The district court adopted the report and recommendation in full and denied the motion to suppress.

II.

We review *de novo* the district court's conclusions of law regarding a denial of a motion to suppress evidence. United States v. Marquez, 605 F.3d 604, 609 (8th Cir. 2010). We review for clear error the district court's findings of fact. Id.

Under the Fourth Amendment, the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Although this applies broadly, "[n]ot all personal encounters between law enforcement and citizens fall within the ambit of the Fourth Amendment." United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001). "A consensual encounter between an officer and a private citizen does not implicate the Fourth Amendment." Id. A consensual encounter, however, may lose its consensual nature and thus become an unlawful seizure. United States v. Lopez-Mendoza, 601 F.3d 861, 865 (8th Cir. 2010).

"The Fourth Amendment permits police officers to approach bus passengers at random to ask questions and to request their consent to searches, provided a reasonable person would understand that he or she is free to refuse." United States v. Drayton, 536 U.S. 194, 197 (2002). "The mere fact that police questioning takes place in the cramped confines of a bus does not transform the questioning into a seizure." United States v. Angulo-Guerrero, 328 F.3d 449, 451 (8th Cir. 2003) (internal punctuation omitted). In this context, the Fourth Amendment is implicated only when, viewed in the light of the totality of the circumstances, a reasonable person would believe he or she is not free to refuse to answer the officer's questions. Id. (citing Florida v. Bostick, 501 U.S. 429, 439 (1991)).

Richards argues that (1) his consent terminated when he declined to give Stevens permission to search his luggage; and (2) Askerooth's request for identification, following immediately after the interaction with Stevens, constituted an unlawful seizure because no reasonable person would have thought that he could refuse the request.

First, Richards' refusal to allow Stevens to search his luggage did not constitute termination of his consent to interact with police; it constituted precisely what Richards said—a refusal to consent to a search of his luggage. To read it more broadly as a general rejection of all further interaction is to put words in Richards' mouth. Moreover, this was not a case in which Richards articulated something vaguely similar to what counsel now proposes that he meant. It is implausible that Richards' statement to the effect that he had done nothing wrong was meant to convey a general refusal to cooperate further with the police.

Second, Askerooth's questions, although they followed soon after Stevens', did not constitute a seizure of Richards. Despite the cramped quarters in which it occurs, police questioning of bus passengers does not inherently constitute a seizure. Angulo-Guerrero, 328 F.3d at 451.

We conclude that a reasonable person in Richards' situation would not have felt compelled to comply with Askerooth's request for identification. In the course of implementing a protocol for consensual interactions with bus passengers, Askerooth approached Richards and articulated a question, not a demand: "May I see your driver's license or your ID?" The tone of her voice was friendly. She was neither brandishing a weapon nor using language that suggested that Richards might be compelled to produce identification if he refused. Neither Askerooth nor any of the other plain-clothes officers on the bus were manifesting a threatening presence. Askerooth did not go over the same subjects with Richards that Stevens had covered, but instead asked Richards for something that Stevens had not requested.

This was not a case of multiple officers coercing a bus passenger into submission by assailing him with multiple requests for the same thing until he complied. Nor was it a case in which police crafted an environment so coercive that Richards' will was overborne and he had no choice but to produce his identification. Richards was free to decline to present identification at the time that he was asked for it, regardless of Askerooth's hindsight reflection that, in light of his suspicious behavior, she would have likely detained Richards had he refused to cooperate. We conclude that, when viewed in the light of the totality of the circumstances, a reasonable person would have felt at liberty to decline Askerooth's request for identification, and thus it did not constitute a seizure for the purposes of the Fourth Amendment.

The interaction between Richards and Askerooth was consensual, no seizure took place, and thus the Fourth Amendment was not implicated. Jones, 269 F.3d at 925. Accordingly, the district court did not err in denying the motion to suppress.

III.

The judgment is affirmed.

_____