# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 19-1807

———————————————————

United States of America

*Plaintiff - Appellee*

v.

Evandro DaCruz-Mendes

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: April 13, 2020
Filed: July 27, 2020

——————————

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

After his motion to suppress evidence was denied, Evandro DaCruz-Mendes pled guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The district court[1] sentenced DaCruz-Mendes to

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

115 months of imprisonment. DaCruz-Mendes now appeals, arguing the district court erroneously denied his motion to suppress evidence because he did not knowingly consent to a search or waive his *Miranda* rights.[2] DaCruz-Mendes also argues the district court erred in determining his sentence by failing to properly weigh certain 18 U.S.C. § 3553(a) factors. We affirm.

## I. Background

DaCruz-Mendes, a native of Brazil, took a bus from Dallas, Texas to Kansas City, Missouri in February 2015. Upon arriving in Missouri, Detective Mark Merrill and a fellow detective stopped DaCruz-Mendes because the officers thought it was suspicious DaCruz-Mendes was carrying only a small duffel bag. Detective Merrill approached DaCruz-Mendes as he was speaking with a taxi driver, verbally identified himself, and showed his badge. Detective Merrill asked DaCruz-Mendes, in English, if he could speak with him, to which DaCruz-Mendes replied in English "Yes, inside." DaCruz-Mendes speaks Portuguese as his primary language, but has been communicating in Spanish and English since first coming to the United States in 2002.

Inside the terminal, Detective Merrill asked to see DaCruz-Mendes's bus ticket and passport, using the Spanish word for ticket, "boleto," at least once. DaCruz-Mendes gave the officers both a ticket and a passport, but the names listed did not match. Detective Merrill then asked DaCruz-Mendes in English if he could look inside his duffle bag, also using the Spanish word for drugs while pointing toward the bag. DaCruz-Mendes responded "yes," in English, and pointed to his bag. When Detective Merrill searched the bag, DaCruz-Mendes voiced no objection. In the bag, Detective Merrill found two Tupperware containers, covered in green plastic wrap, containing methamphetamine.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

At this point, Detective Merrill placed DaCruz-Mendes under arrest and led him to an office inside the bus terminal for further investigation. Given that English was not DaCruz-Mendes's first language, Detective Antonio Garcia, who was fluent in Spanish, was called into the office to aid in the interview. Before beginning the interview, Detective Garcia provided DaCruz-Mendes with a written copy of the *Miranda* warnings in Spanish. DaCruz-Mendes read the entire form aloud in Spanish. Then DaCruz-Mendes stated in Spanish he understood his rights and signed the *Miranda* waiver. At no point did DaCruz-Mendes indicate he did not understand Spanish. During the interview, he told Detective Garcia that he spoke Portuguese but also understood Spanish.

Detective Garcia went on to interview DaCruz-Mendes for approximately two hours in Spanish. Over the course of the interview, DaCruz-Mendes provided precise details, in Spanish, about the narcotics exchange in which he was involved.

At one point during this interview, DaCruz-Mendes's phone rang and displayed the name "Gordito." DaCruz-Mendes identified Gordito as the source in Texas for whom he was transporting the methamphetamine. The officers then asked for permission to search DaCruz-Mendes's phone. Again, DaCruz-Mendes consented, reading aloud an additional consent form written in Spanish and signing it.

After being charged, DaCruz-Mendes moved to suppress the evidence gathered from the search of his bag, his cell phone, and the interview with Detective Garcia, arguing he lacked sufficient knowledge to consent given the language barrier. The magistrate judge[3] held a suppression hearing, and then recommended denying the motion. The district court adopted the report and recommendation. DaCruz-Mendes later pled guilty, reserving the right to appeal the suppression motion.

---

[3]The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

## II. Analysis

## A. Motion to Suppress

On appeal of a denial of a motion to suppress evidence we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Vanover*, 630 F.3d 1108, 1113 (8th Cir. 2011). The district court's credibility determinations are "virtually unreviewable on appeal." *United States v. Wright*, 739 F.3d 1160, 1166–67 (8th Cir. 2014) (quoting *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995)).

The Fourth Amendment prohibits unreasonable searches and seizures, but "[n]ot all personal encounters between law enforcement and citizens fall within the ambit of the Fourth Amendment." *United States v. Richards*, 611 F.3d 966, 968 (8th Cir. 2010) (alteration in original) (quoting *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). Consensual encounters between officers and citizens are permitted. *Id.* at 968–69. "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage — provided they do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 201 (2002). The encounter is considered consensual so long as a reasonable person would feel free to terminate the encounter or refuse to answer questions. *Id.*

First, DaCruz-Mendes argues the district court clearly erred in its factual findings surrounding the initial encounter with the police. He suggests the district court failed to give due weight to evidence suggesting the encounter was not consensual. However, the district court relied on officer testimony to conclude the encounter was consensual and we will not disturb that credibility finding. *See Wright*, 739 F.3d at 1166-67. We see no clear error in the factual findings of the district court as to this issue.

DaCruz-Mendes also suggests the district court committed legal error in finding that the initial encounter with the police was consensual rather than an illegal seizure under the Fourth Amendment. To determine whether an encounter with the police was consensual, we consider the totality of the circumstances, looking at factors such as the brandishing of weapons, the use of commands, or language indicating compliance is necessary — among others. *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012). Here, the district court's findings surrounding the encounter support the conclusion that DaCruz-Mendes did consent to the encounter. There was no clear error in finding there was no brandishing of weapons, physical touch, or threats or commands to indicate to DaCruz-Mendes that he was not free to terminate the encounter. Though DaCruz-Mendes argues the presence of two officers stopping him as he entered a taxi suggested a coercive show of police force, that alone is not enough to create a seizure under the Fourth Amendment when considering the totality of the circumstances. Accordingly, we find the initial encounter between the detectives and DaCruz-Mendes was consensual.

Likewise, a reasonable officer would believe DaCruz-Mendes had consented to the search of his luggage despite the existing language barrier. "A consensual search does not violate the Fourth Amendment if the consent was given voluntarily and without coercion." *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005). Determining whether consent to search was given voluntarily requires an analysis of the totality of the circumstances. *United States v. Carr*, 895 F.3d 1083, 1089 (8th Cir. 2018). We have found that individuals can consent to searches despite language difficulties. *See, e.g.*, *United States v. Cedano-Medina*, 366 F.3d 682, 684–87 (8th Cir. 2004); *United States v. Mendoza-Cepeda*, 250 F.3d 626, 629 (8th Cir. 2001). In this case, DaCruz-Mendes was still in a public space when the bag search was initiated. The police officers made no threats or misrepresentations. DaCruz-Mendes did not object to the search at any point nor did he indicate that he did not understand what Detective Merrill was asking. "[T]he Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v.*

-5-

*Garcia*, 197 F.3d 1223, 1227 (8th Cir. 1999) (quoting *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998)). DaCruz-Mendes's responsiveness to the detective's questions and affirmative response when asked if his bag could be searched would indicate to a reasonable officer that the search was consensual.

Similarly, the later search of DaCruz-Mendes's cell phone was also consensual. Before his cell phone was searched, DaCruz-Mendes read aloud and signed a consent form in Spanish. And, by this point, Detective Garcia had been speaking with DaCruz-Mendes in Spanish for some time. During this conversation, DaCruz-Mendes provided a detailed discussion about the drug exchange in which he was involved. Based on this interaction, Detective Garcia reasonably believed DaCruz-Mendes voluntarily gave consent to search his cell phone and understood what his consent entailed. Given that DaCruz-Mendes and Detective Garcia were able to communicate to each other over the course of the interview, DaCruz-Mendes read and signed the consent disclosure, and there was no indication of coercion, a reasonable officer would believe DaCruz-Mendes had consented, making the cell phone search consistent with the Fourth Amendment. *See Garcia*, 197 F.3d at 1227.

Finally, the district court did not clearly err in concluding DaCruz-Mendes's waiver of his *Miranda* rights was knowing and voluntary. For a waiver to be voluntary, it must first be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). And, the waiver must be undertaken "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran*, 475 U.S. at 421). DaCruz-Mendes does not allege coercion or intimidation, only that he did not understand Spanish well enough to waive his *Miranda* rights with full awareness. DaCruz-Mendes read the *Miranda* waiver aloud in Spanish and he indicated to Detective Garcia that he understood the content. Now, DaCruz-Mendes argues he did not understand. However, following the *Miranda* waiver, Detective

-6-

Garcia spoke with him for roughly two hours in Spanish. During this time DaCruz-Mendes provided specific details about the drug trade in which he was involved. This long, thorough conversation held in Spanish contradicts DaCruz-Mendes's claim that he did not understand Spanish enough to appreciate the *Miranda* rights he waived. Since the record reflects both an absence of coercion or intimidation, and the requisite understanding of Spanish to appreciate the value of his *Miranda* rights, DaCruz-Mendes's waiver of those rights was valid.

## B. Sentencing

DaCruz-Mendes was sentenced to 115 months of imprisonment following his guilty plea. The United States Sentencing Guidelines Manual ("Guidelines") recommended a sentence of 108 to 135 months of imprisonment. On appeal, DaCruz-Mendes challenges his sentence, arguing the district court improperly weighed mitigating and § 3553(a) factors.

We review the substantive reasonableness of a sentence using a deferential abuse of discretion standard. *United States v. Mitchell*, 914 F.3d 581, 587 (8th Cir. 2019). An abuse of discretion occurs when a district court "fails to consider a relevant factor that should have received significant weight . . . [or] gives significant weight to an improper or irrelevant factor." *United States v. Berry*, 930 F.3d 997, 1000 (8th Cir. 2019) (alterations in original) (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). Additionally, the district court has discretion in determining how to weigh sentencing factors, and on appeal a defendant "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors." *United States v. Long*, 906 F.3d 720, 727 (8th Cir. 2018) (quoting *United States v. Townsend*, 617 F.3d 991, 995 (8th Cir. 2010)). We presume sentences within the Guidelines recommended range are reasonable. *United States v. Duke*, 932 F.3d 1056, 1062 (8th Cir. 2019).

Here, DaCruz-Mendes argues the district court failed to properly weigh certain factors in his favor and meaningfully consider those mitigating factors. To the contrary, the district court properly undertook an analysis of the § 3553(a) factors, addressing them specifically at the sentencing hearing. How the district court chose to weigh those factors was within its discretion. *Long*, 906 F.3d at 727. Additionally, the 115-month sentence was squarely within the recommended range. This sentence is presumed reasonable and there is no evidence suggesting the district court failed to give due consideration to any factors. Since the district judge gave due consideration when weighing all factors and the sentence fell within the Guidelines range, we find no abuse of discretion.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____