# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1600

———————————————

United States of America

*Plaintiff - Appellee*

v.

Kehinda Mitchell

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: November 12, 2018
Filed: January 23, 2019

——————————

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

On November 21, 2017, Appellant Kehinda Mitchell pled guilty to three counts: (1) Conspiracy to Commit Offenses Against the United States, (2) Interstate Transportation of a Stolen Vehicle, and (3) Fraudulent Use of Access Devices. The

district court[1] sentenced Mitchell to 41 months' imprisonment to be followed by three years of supervised release. Mitchell now appeals, asserting that (1) the district court erred by applying a two-level sophisticated-means enhancement under §2B1.1(b)(10)(C) of the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G."), (2) the district court committed procedural error by failing to consider the 18 U.S.C. § 3553(a) sentencing factors and to adequately explain its reasons for the sentence, and (3) his high end of the Guidelines range sentence is substantively unreasonable.

## I. Background

On December 5, 2015, Mitchell and an unindicted co-conspirator, as loan co-applicants, purchased a new 2015 Dodge Durango for $56,234.58 from an automobile dealership in Platteville, Wisconsin. To obtain the loan, Mitchell fraudulently used the Social Security number of another individual and falsely claimed he earned $7,500 per month as the director of a dental center. In the months following, Mitchell and his co-defendants, Earl Douglas Chapman and Julius Rishawn Livingston, obtained the identifying information of at least twenty-four individuals.

Mitchell, Chapman, Livingston, and one other individual traveled from Illinois to the St. Louis, Missouri, area in the Durango on March 8, 2016. They possessed counterfeit Illinois driver's licenses; identifying information of other individuals, including names, dates of birth, Social Security numbers, and credit/debit account numbers; and fraudulent credit cards bearing the names and account numbers of others. The co-defendants also possessed merchandise and gift cards that they fraudulently purchased in Columbus, Ohio; Charlotte, North Carolina; and Southfield, Michigan, between February 21, 2016, and March 2, 2016.

---

[1] The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

On the day of their arrival in the St. Louis area, the men traveled to three Target stores. Chapman and Livingston used fraudulent credit cards to purchase Target gift cards and merchandise exceeding $5,750 in value. Livingston also unsuccessfully attempted to purchase two iPads at one of the Target stores. That same day, Chapman applied for a Saks Fifth Avenue line of credit in Frontenac, Missouri, using the personal information of victim J.M. and a counterfeit driver's license bearing J.M.'s information and Chapman's photo. Chapman successfully purchased merchandise totaling $2,047.90.

On March 9, 2016, Chapman applied for a Neiman Marcus line of credit at its store in Frontenac, again using J.M.'s information and the same counterfeit license. Using the Neiman Marcus line of credit and a fraudulent USAA Mastercard, Chapman purchased merchandise valuing $7,257.23 and left in the Durango.

That evening, the men drove to Town and Country, Missouri, and returned to one of the Target stores. Chapman attempted to use two fraudulent credit cards to purchase Target gift cards, iPads, and a package of T-shirts, but each card was declined twice. Aware that a fraud was in progress, a Target loss prevention associate contacted the Town and Country Police Department. Meanwhile, Chapman went to the electronics section of the store and attempted to use another fraudulent credit card. The card was initially declined, but Chapman successfully purchased $1,861.31 worth of merchandise on the second swipe. As the defendants were driving away from the store, officers arrived on scene. The officers stopped the Durango in the parking lot of a nearby grocery store and arrested the defendants. Inside the Durango and the defendants' hotel room in downtown St. Louis, officers located several counterfeit driver's licenses, fraudulent credit cards, gift cards, and items of merchandise purchased with the fraudulent credit cards.

Mitchell pled guilty to the three counts and proceeded to sentencing on March 8, 2018. After hearing from counsel, the court found Mitchell's base offense level

was 6. The court applied enhancements for the amount of loss, number of victims, the possession/use/production/trafficking of an authentication feature, and obstruction of justice. Relevant here, the court also applied (over defense objection) a two-level enhancement for sophisticated means under U.S.S.G. §2B1.1(b)(10)(C). The court denied a four-level minimal-participant reduction and a two-level reduction for acceptance of responsibility. The court found the total offense level was 20.

Mitchell received one criminal history point for a 2014 theft by deception - false impression conviction in Allegheny County, Pennsylvania. That conviction involved Mitchell's purchase of a Mercedes valued at $147,435.88 in which he used a stolen Social Security number. Mitchell's history also included a conviction for first-degree murder in 1995 in Cook County, Illinois. He served fifteen years of a thirty-year sentence before being paroled. After his release from prison, he was exonerated. With one criminal history point, Mitchell's criminal history category was I.

The court calculated an advisory Guidelines range of 33 to 41 months. Mitchell moved for a downward variance for the following reasons: (1) his "good character, limited criminal history, and unblemished personal history" show "he poses no risk of recidivism," which was attested to in a letter from a jail supervisor; (2) Mitchell's role in the offense was limited; and (3) he unjustly lost fifteen years of his life due to the wrongful murder conviction. The government moved for an upward variance.

After Mitchell spoke in allocution, the district court pronounced a sentence of 41 months' imprisonment:

> After reviewing the Presentence Report, hearing and ruling objections to the Presentence Report, reviewing the Defendant's sentencing

memorandum and letters of support and the Government's motions and objections to the sentencing – Defendant's Sentencing Memorandum.

The instant offense involved the Defendant conspiring with two others to fraudulently obtain merchandise and gift cards by using the personal identification and credit information of 24 individuals. The Defendant is most culpable as he fraudulently obtained an automobile using the Social Security Number of a minor child in order to transport the Defendants during the offense.

The Defendant's criminal history includes one prior conviction for theft by deception.

The Defendant is the father to two minor children.

As such, in light of the advisory guidelines range and the provisions of 18 USC Section 3553(a), a sentence of 41 months' imprisonment, which represents the high end of the guideline range, I believe, would be sufficient but not greater than necessary to comply with the purposes set forth in 18 USC Section 3553(a).

. . .

And just so you will know, I've considered what has happened to you in the past, and that's one . . . reason why I didn't vary upward at the request of Ms. Berry, but I don't believe any of that stuff about this is somebody else's fault. You were behind this mess, and today is the first time that I've ever heard you almost admit it, but you couldn't even admit that. So that's why you didn't get a higher sentence.

Mitchell timely appealed his sentence.

## II. Discussion

### A. Sophisticated-Means Enhancement

Mitchell argues the district court erred when it applied a two-level enhancement for sophisticated means under U.S.S.G. §2B1.1(b)(10)(C). We review a district court's "factual finding of whether a . . . scheme qualifies as 'sophisticated' for clear error." United States v. Jones, 778 F.3d 1056, 1059 (8th Cir. 2015) (ellipses in original) (quoting United States v. Huston, 744 F.3d 589, 592 & n.2 (8th Cir. 2014)). The finding "will stand 'unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" Id. (quoting United States v. Walker, 688 F.3d 416, 420–21 (8th Cir. 2012)).

The Guidelines provide for a two-level enhancement when the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. §2B1.1(b)(10)(C). The Application Note defines "sophisticated means" as "especially complex or especially intricate conduct pertaining to the execution or concealment of an offense." U.S.S.G. §2B1.1 cmt. n.9(B). "'Sophisticated means need not be highly sophisticated,' and the adjustment is 'proper when the offense conduct, viewed as a whole, was notably more intricate than that of the garden-variety offense.'" United States v. Gaye, 902 F.3d 780, 791 (8th Cir. 2018) (quoting United States v. Norwood, 774 F.3d 476, 480 (8th Cir. 2014) (per curiam)). "Repetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme." United States v. Melton, 870 F.3d 830, 843 (8th Cir. 2017) (quoting United States v. Jenkins, 578 F.3d 745, 751 (8th Cir. 2009)). "[T]he sophistication of the offense conduct is associated with the means of repetition, the coordination required to carry out the repeated conduct, and the number of repetitions or length of time over which the scheme took place."

<u>Gaye</u>, 902 F.3d at 791 (alteration in original) (quoting <u>United States v. Laws</u>, 819 F.3d 388, 393 (8th Cir. 2016)).

We conclude there was sufficient evidence in the sentencing record for the district court to find the offense involved sophisticated means. Taken alone, the individual activities that Mitchell and his co-defendants engaged in were not extraordinarily intricate or high-tech—and sometimes were unsuccessful—but the scheme as a whole was sufficiently sophisticated. To acquire a vehicle, which allowed the defendants to travel to multiple states to make fraudulent purchases, Mitchell used a fraudulently obtained Social Security number coupled with fabricated employment information. During the following months, the defendants obtained the identifying information of twenty-four individuals, counterfeit driver's licenses, and credit cards embedded with the victims' account information. Between February 21, 2016, and March 2, 2016, they traveled to three cities where they successfully used fraudulent credit cards to purchase Target gift cards without detection. During their two-day shopping spree in St. Louis in March 2016, the defendants fraudulently purchased more than $16,000 worth of merchandise and gift cards. In total, Mitchell was tied to sixteen fraudulent credit card transactions in five states between February 2016 and May 2016.[2]

This "repetitive and coordinated conduct" of Mitchell and his co-defendants over the course of several months amounted to a sophisticated scheme. <u>United States v. Borders</u>, 829 F.3d 558, 570 (8th Cir. 2016) (quoting <u>United States v. Fiorito</u>, 640 F.3d 338, 351 (8th Cir. 2011)) (holding that the district court did not clearly err in applying a sophisticated-means enhancement where the defendant was connected to several events over a period of time, the scheme involved thousands of dollars, and

---

[2]The defendants continued their fraudulent scheme after Mitchell was released from custody on March 10, 2016. They were arrested in California on April 5, 2016, after possessing and using fraudulent credit cards in that state. They also attempted to fraudulently purchase two more vehicles in Michigan in May 2016.

the defendant undertook multiple steps that were necessary for the scheme's success). The district court did not clearly err in imposing the two-level enhancement.

### B. Procedural Reasonableness

Mitchell argues the district court committed procedural error by failing to consider the sentencing factors listed in 18 U.S.C. § 3553(a) and to adequately explain the sentence. Because Mitchell did not object to these alleged procedural errors during sentencing, we review for plain error. United States v. Thomas, 790 F.3d 784, 786 (8th Cir. 2015) (citing United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009)).

We conclude the district court did not err, let alone plainly err. During its pronouncement of the sentence, the district court referenced the Presentence Investigation Report, the parties' sentencing memoranda, and letters in support of Mitchell; discussed the nature of the offense, Mitchell's role in the offense, and his criminal history; mentioned § 3553(a) three times; and explained that Mitchell's prior wrongful conviction provided reason not to vary upward as the government had requested. The record establishes the court considered the § 3553(a) factors and adequately explained the sentence.

### C. Substantive Reasonableness

Mitchell also contends his 41-month sentence is substantively unreasonable. He argues the district court improperly gave great weight to negligible aggravating factors that were already accounted for by the Guidelines and dismissed his mitigation evidence as merely a reason for not varying upward. We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received

-8-

significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Washington, 893 F.3d 1076, 1080 (8th Cir. 2018) (quoting United States v. Marshall, 891 F.3d 716, 719 (8th Cir. 2018) (per curiam)). A sentence that falls within the Guidelines range is presumptively reasonable. Id. (citing United States v. Meadows, 866 F.3d 913, 920 (8th Cir. 2017)).

The district court did not engage in impermissible double counting by using the same conduct to enhance his offense level and to justify a possible upward variance. The case relied on by Mitchell, United States v. Peck, 496 F.3d 885 (8th Cir. 2007), is inapposite. Peck prohibits the application of "one part of the Guidelines . . . to increase a defendant's punishment on account of a kind of harm that has already been . . . accounted for by application of another part of the Guidelines." Id. at 890 (second ellipses in original) (quoting United States v. Jones, 440 F.3d 927, 929 (8th Cir. 2006)). In the present case, the district court relied on the same conduct that affected the Guidelines range as justification for an upward variance were it not for Mitchell's prior wrongful conviction. We have explained that "factors that have already been taken into account in calculating the advisory guideline range . . . can nevertheless form the basis of a variance." United States v. Chase, 560 F.3d 828, 831 (8th Cir. 2009) (citing United States v. White, 506 F.3d 635, 644 (8th Cir. 2007)).

The district court did not make a clear error of judgment when weighing the aggravating and mitigating factors. The court decided that the nature of the offense (specifically the number of victims), Mitchell's role in the offense, his pattern of fraudulent behavior since he was paroled, and his failure to completely own up to his behavior outweighed the injustice done to him in the past and the rehabilitative potential expressed by the jail supervisor. We grant district courts "wide latitude to weigh the § 3553(a) [factors] in each case and assign some factors greater weight than others in determining an appropriate sentence." Washington, 893 F.3d at 1080–81 (quoting United States v. Ritchison, 887 F.3d 365, 370 (8th Cir. 2018)). Mitchell has

not overcome the presumption of reasonableness that we afford to within-Guidelines sentences.

## III.   Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____