United States Court of Appeals

For the Eighth Circuit

_____

No. 19-3172

_____

United States of America

*Plaintiff - Appellee*

v.

Jay J. Sawatzky

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 25, 2020
Filed: April 19, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Jay J. Sawatzky pled guilty to three counts of possessing a firearm and ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] varied upward from the United States Sentencing Guidelines Manual's

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

("Guidelines") 84 to 105 months' range by sentencing Sawatzky to 120 months of imprisonment on each count, to be served concurrently. Sawatzky appeals his sentence, arguing that the sentencing was procedurally unfair based on a purported Sixth Amendment violation; the district court committed a procedural error in determining his advisory sentencing range; and the district court imposed a substantively unreasonable sentence. For the reasons below, we affirm.

## I. Background

In April 2018, an officer observed Sawatzky and his girlfriend riding a motorcycle together despite a no-contact order stemming from allegations that Sawatzky strangled his girlfriend the previous year. Officers placed Sawatzky under arrest and conducted an inventory search of the motorcycle, finding methamphetamine. The next day, officers executed a search warrant at a residence where Sawatzky frequently stayed and found a Benelli shotgun near hundreds of rounds of various kinds of ammunition. Later that year and in January 2019, officers recovered evidence that Sawatzky was in possession of additional ammunition and two other firearms, one of them reportedly stolen. During a search of Sawatzky's cellular phone in January 2019, officers recovered a photograph depicting Sawatzky with what appeared to be a Benelli shotgun nearby.

Sawatzky pled guilty to three counts of possessing a firearm and ammunition as a felon. Sawatzky's sentencing was scheduled for Wednesday, October 2, 2019. However, on the Friday prior to sentencing, a search of Sawatzky's jail cell resulted in the seizure of hundreds of pages of documents, including correspondence with his attorney. At the sentencing hearing, counsel for the government represented that no recently seized materials would be used at sentencing. Counsel for the government also represented: (1) the seized documents were reviewed by a civil attorney, who separated privileged and unprivileged materials; (2) the prosecution team did not review any privileged materials; and (3) privileged materials were returned to Sawatzky's counsel on the Monday prior to sentencing. The district court offered to continue the sentencing hearing, specifying it could be reset to a time prior to

-2-

Sawatzky's state court criminal trial. Sawatzky decided to proceed with sentencing as originally scheduled.

During the sentencing hearing, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified about Sawatzky's domestic violence charges and his association with a violent motorcycle gang. The ATF agent also testified about a photograph, which was recovered from Sawatzky's cellular phone, depicting Sawatzky sitting at a desk in an outbuilding of his residence with a shotgun leaning on a cabinet near him. The ATF agent affirmed that the photograph, although discovered in January 2019, was from July of 2016. The photograph's metadata shows the file name included "20160707," indicating it was taken on July 7, 2016. The ATF agent believed the Benelli shotgun recovered from Sawatzky's residence and the firearm in the cellular phone photograph are the same firearm. He explained they are the same type of firearm with the same markings, although one of the firearms had a removable magazine extender in the photograph entered into evidence. Additionally, despite Sawatzky's assertion that he had a shotgun-style BB gun, the ATF agent testified he knew of no toy gun styled like a Benelli shotgun.

## II. Discussion

### A. Sixth Amendment

Sawatzky argues the seizure of documents from his jail cell days before his sentencing hearing resulted in a fundamentally unfair proceeding. He alleges the government's conduct interfered with his access to counsel and his ability to prepare for the sentencing hearing. Additionally, he argues the constitutional harm occurred at the time of the seizure. During the hearing, Sawatzky sought exclusion of any information derived from the seized materials. On appeal, Sawatzky asks the court to view the incident not only as a case-specific prosecutorial interference matter but as one also impacting the future attorney-client relationship, such as during any future criminal proceedings. Specifically, Sawatzky notes he was subject to state criminal proceedings at the time of the seizure, and because law enforcement officers

from the sheriff's office were involved in reviewing the seized materials, potential exists for future prejudice outside the federal sentencing context. Finally, he argues that to choose between a delay of the federal sentencing or participating unprepared was a Hobson's choice because of the potential for a higher federal sentence following his state court trial. For these reasons, Sawatzky seeks a remand for resentencing, exclusion of evidence, and an expanded record.

"We review claims of constitutional error de novo." *United States v. Sweeney*, 611 F.3d 459, 473 (8th Cir. 2010). "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This provision "guarantees criminal defendants a meaningful opportunity to present a complete defense[.]" *United States v. Holmes*, 413 F.3d 770, 774 (8th Cir. 2005) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

A defendant establishes a Sixth Amendment violation if (1) "the government knowingly intruded into the attorney-client relationship," and (2) "the intrusion demonstrably prejudiced the defendant, or created a substantial threat of prejudice." *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986) (internal citations omitted). The remedy for a Sixth Amendment deprivation "should be tailored to the injury suffered from the constitutional violation[.]" *United States v. Solomon*, 679 F.2d 1246, 1250 (8th Cir. 1982) (holding "remedies should be limited to denying the government use of the results of its intrusion"). Further, the remedy should "assure the defendant effective assistance of counsel in a subsequent proceeding." *Singer*, 785 F.2d at 234–35.

Assuming, without deciding, that the government knowingly intruded into the attorney-client relationship when officers seized privileged documents from Sawatzky's cell, he has the burden of demonstrating he suffered prejudice. *See Singer*, 785 F.2d at 234. Sawatzky, however, fails to demonstrate any particular prejudice or substantial threat of prejudice to his sentencing proceeding. No evidence derived from the seized materials was introduced at the sentencing hearing. The district court offered Sawatzky additional time to prepare for the sentencing

-4-

hearing, assuring Sawatzky the federal sentencing could easily precede his state court criminal trial, thus alleviating any concern the delay could negatively influence the sentencing. Sawatzky does not explain how the district court's proposed remedy would fail to cure any prejudice stemming from the seizure of materials for a few days prior to the sentencing hearing. Neither does he demonstrate how the time without his materials impacted his sentencing at all. *See United States v. Morrison*, 449 U.S. 361, 366 (1981) (rejecting a Sixth Amendment claim because "respondent has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of her counsel to provide adequate representation in these criminal proceedings"). Sawatzky fails to suggest how either his state court proceedings or ongoing attorney-client relationship were prejudiced. In any event, it would not be this court, but the relevant presiding court who would evaluate any prejudice permeating future hypothetical proceedings.

We therefore conclude the district court's offer of additional time to prepare for the sentencing hearing was an adequate shield from prejudice, given the relatively short-term deprivation of materials and absence of any evidence derived from the seized materials being used for sentencing. Under these circumstances, we hold Sawatzky has not established a Sixth Amendment violation.

## B. Guidelines Sentencing Range Calculation

Sawatzky argues the district court committed procedural error when calculating his Guidelines-recommended sentence by relying on his two prior convictions. Specifically, he argues the convictions are: (1) too old to consider as part of his criminal history score, (2) too close together to count as separate convictions, and (3) not "controlled substance offense[s]" under Guidelines § 4B1.2(b).

"In reviewing a sentence for significant procedural error, we review a district court's factual findings for clear error and its interpretation and application of the [G]uidelines de novo." *United States v. Smith*, 983 F.3d 1006, 1008 (8th Cir. 2020)

(alteration in original) (quoting *United States v. Marshall*, 891 F.3d 716, 719 (8th Cir. 2018)). The government has the burden of proving facts supporting sentencing enhancements by a preponderance of the evidence. *United States v. Mannings*, 850 F.3d 404, 408 (8th Cir. 2017).

Under the Guidelines, the sentencing court calculates a defendant's criminal history score by including, among other things, "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense[.]" U.S.S.G. § 4A1.2(e)(1). The calculation "[a]lso count[s] any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." *Id*. Sawatzky argues the district court erred by counting two convictions outside the fifteen-year period contrary to the Guidelines provisions.

Sawatzky pled guilty on May 3, 1999, to (1) possession of methamphetamine on October 30, 1998, with intent to manufacture or deliver, and (2) conspiracy to manufacture methamphetamine on February 18, 1999. Both crimes violate Iowa Code § 124.401. *See* Iowa Code § 124.401(1)(b)(7) and (c)(6). Sawatzky was sentenced to a term of imprisonment exceeding one year and one month for each crime, the sentences to run concurrently, and he was released on December 5, 2001. As part of the current federal crime, Sawatzky pled guilty to possessing, on or about April 12, 2018, the Benelli shotgun and ammunition. April 12, 2018—the date officers discovered the Benelli shotgun—is outside the fifteen-year period for counting the earlier crimes as part of Sawatzky's criminal history. Accordingly, the government has the burden of showing the gun crime commenced within fifteen years of the earlier drug crimes, which period of time ended on December 5, 2016.

The government alleged Sawatzky possessed the Benelli shotgun in July 2016. As evidence, the government relies upon the cellular phone photograph of Sawatzky with the Benelli shotgun. The presentence investigation report ("PSR") paragraph 14 states that officers seized Sawatzky's phone in January 2019 and

recovered from it a photograph dating back to July 2016 of Sawatzky with the Benelli shotgun. Sawatzky objected to the PSR, arguing the photograph does not show him with the Benelli shotgun, but rather "shows him in a room with what appears to be a shotgun. [He] had a similar designed weapon that was a bb [sic] gun." In his objections, Sawatzky did not object to the date assigned to the photograph in the PSR, nor did he raise the issue during the sentencing hearing. On appeal, however, Sawatzky argues the government failed to prove the photograph was taken prior to December 2016.

During the sentencing hearing, the district court heard evidence that officers recovered a photograph from Sawatzky's cellular phone, that its metadata indicated it was taken on July 7, 2016, and that it depicts Sawatzky sitting near a shotgun. In addition to being able to compare the recovered photograph with a photograph of the firearm found in Sawatzky's residence, the district court heard testimony from the ATF agent who, based on his observations, experience and research, believed the firearms were the same one and the recovered photograph was not of a toy gun. The district court then overruled Sawatzky's objection to paragraph 14 of the PSR. The district court found the July 2016 photograph depicted the same Benelli shotgun as the one seized by officers in April 2018.

Based on the evidence presented, the district court did not commit clear error when finding the photographs depicted the same shotgun. Similarly, assuming Sawatzky preserved his argument as to the date of the earlier photograph, a preponderance of the evidence exists to support the determination it had been taken prior to December 2016.

The Guidelines' plain language and this circuit's precedent foreclose Sawatzky's other two procedural-error arguments. First, Sawatzky argues he was unfairly surprised by the fact he had *two* separate prior convictions when the state court treated them as a single offense for sentencing. Nevertheless, the convictions are counted independently because they were separated by an intervening arrest—that is, he was "arrested for the first offense prior to committing the second offense."

U.S.S.G. § 4A1.2(a)(2).  While Sawatzky did object to the PSR counting the offenses separately, he does not dispute his arrest for the October 1998 offense occurred prior to commission of the February 1999 offense.  Therefore, the district court properly counted the convictions separately when determining Sawatzky's criminal history score.  *See United States v. Grady*, 931 F.3d 727, 730 (8th Cir. 2019).

Second, Sawatzky argues the district court relied on an inflated Guidelines sentencing range when it improperly increased his base offense level under Guidelines § 2K2.1(a)(2) after wrongly determining his prior convictions under Iowa Code § 124.401 were categorically "controlled substance offense[s]" under Guidelines § 4B1.2(b).  However, the Eighth Circuit has held "section 124.401 fits within the Guidelines definition of a controlled substance offense."  *United States v. Castellanos Muratella*, 956 F.3d 541, 544 (8th Cir. 2020) (discussing *United States v. Brown*, 638 F.3d 816, 818–19 (8th Cir. 2011)); *see also United States v. Ford*, 888 F.3d 922, 930 (8th Cir. 2018) ("The structure of [Iowa Code § 124.401] reveals that it is divisible because different drug types and quantities carry different punishments.").  Therefore, the district court correctly considered Sawatzky's prior convictions as controlled substance offenses for purposes of determining his base offense level.  Overall, the district court did not commit procedural error by including the prior Iowa convictions in the sentencing calculation.

### C.  Substantive Reasonableness

In the absence of procedural error, we review Sawatzky's sentence for "substantive reasonableness under a 'deferential abuse-of-discretion standard.'" *United States v. Stephen*, 984 F.3d 625, 632 (8th Cir. 2021).  Sawatzky argues his sentence is substantively unreasonable because the district court failed to depart downward from an over-represented criminal history and failed to consider or improperly considered other factors.  "A district court's decision to deny a downward departure is unreviewable unless the district court had an unconstitutional motive or erroneously thought that it was without authority to grant the departure." *United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1037 (8th Cir. 2019) (cleaned

up) (quoting *United States v. Phelps*, 536 F.3d 862, 868 (8th Cir. 2008)). Sawatzky does not contend the district court either had an unconstitutional motive or thought it was without the authority to grant a departure. Accordingly, we cannot review the decision not to depart downward, but we will review whether Sawatzky's criminal history was over-represented with the other factors relevant to substantive reasonableness.

Generally, the sentencing court should consider, but need not make specific findings regarding, each sentencing factor under 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 50–51 (2007); *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). However, "[w]here a sentence is outside the advisory guideline range, we consider the extent of the deviation, giving 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *United States v. Shoulders*, 988 F.3d 1061, 1064 (8th Cir. 2021) (quoting *Gall*, 552 U.S. at 51). While a district court has wide latitude in weighing sentencing factors, it "abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error in judgment." *Feemster*, 572 F.3d at 461 (internal quotations and citation omitted).

Sawatzky contends the district court should have imposed a more lenient sentence due to his artificially inflated criminal history and positive characteristics, as noted in letters from his family and friends. Additionally, he argues the district court improperly considered unsubstantiated allegations against him for domestic violence and his participation in a violent motorcycle gang, including his possession of racist memorabilia.

The district court agreed that Sawatzky's criminal history score may have been over-represented by the Guidelines calculations because the prior convictions occurred so long ago and may have been treated as a single offense by the Iowa court, thus Sawatzky's criminal history might indicate he is less dangerous than the

Guidelines would suggest. Nevertheless, the district court found other factors, such as evidence of racial violence, possession of racist objects, history of domestic abuse, and statements about threatening prosecutors, of greater concern. These other factors indicated to the sentencing court that Sawatzky may actually be *more* dangerous than a typical felon-in-possession defendant and *more* dangerous than the Guidelines reflected. We conclude the district court did not enhance Sawatzky's sentence based on his beliefs or viewpoints but rather on proper and relevant factors including his history of violence and abuse.

We find no clear error of judgment in weighing the relevant aggravating and mitigating factors. Having reviewed the sentencing record and the district court's reasoning for the sentence imposed, we conclude the district court did not abuse its discretion or impose a substantively unreasonable sentence. The district court was within its discretion to rely primarily upon the seriousness of the offense, especially in light of Sawatzky's other conduct, rather than his nearly outdated criminal history and letters written on his behalf by friends and family.

## III. Conclusion

The district court properly included Sawatzky's prior convictions in the sentencing range calculation and applied a substantively reasonable sentence. Further, despite the presentence seizure of documents, Sawatzky fails to show prejudice to support a Sixth Amendment violation. We therefore affirm Sawatzky's sentence.

_____