# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1556
_____

United States of America

*Plaintiff - Appellee*

v.

Russell Tafron Weatherspoon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: April 13, 2026
Filed: May 5, 2026

_____

Before KELLY, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Russell Weatherspoon pleaded guilty to conspiring to commit wire fraud, *see* 18 U.S.C. §§ 1343, 1349, the district court[1] sentenced him to 130 months in prison. He maintains on appeal that the court misapplied two enhancements when

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

calculating his recommended sentencing range and imposed an unreasonable sentence. We disagree and affirm.

Weatherspoon carried out his fraudulent scheme from what some might consider an unlikely location—a Georgia prison. For at least two years, he and other prisoners identified women who worked in the medical profession, called them from cell phones dropped into the prison by a drone, and convinced them that they had failed to appear in court after being subpoenaed to do so. The coconspirators used a smartphone spoofing application that caused a local police department's phone number to display on the victim's Caller ID, and callers would impersonate real, identifiable police officers and threaten victims with arrest unless they paid a bond. Victims would then meet unincarcerated coconspirators at local bail bond companies and hand over money. Investigators identified two dozen victims from around the country who fell for the ruse, including some in the Southern District of Iowa where Weatherspoon was prosecuted.

The district court determined that the recommended sentence under the Sentencing Guidelines was 130–162 months in prison. This calculation included a two-level enhancement because the offense "involved sophisticated means." *See* USSG § 2B1.1(b)(10)(C). The Guidelines commentary describes sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *See id.* § 2B1.1 cmt. n.9(B). We've said that the "enhancement is proper when the offense conduct, viewed as a whole, was notably more intricate than that of the garden-variety offense" and that repetitive and coordinated conduct can amount to a sophisticated scheme even though no one step in it is particularly complicated. *See United States v. Meadows*, 866 F.3d 913, 917 (8th Cir. 2017). A district court's determination that a scheme involved sophisticated means is a factual finding we review for clear error. *See id.*

In applying the enhancement, the district court observed that the conspirators had "meticulously researched" the victims' backgrounds and circumstances before targeting them. As the court pointed out, the coconspirators used the real names and addresses of courts and bail bonds companies and impersonated real police officers. It also noted that the "fraud was exceptionally well planned" with "several sophisticated layers intended to avoid detection" and had continued for more than two years, reaching women all over the country. The court also found that Weatherspoon controlled many phone numbers and managed several financial accounts as part of the conspiracy, and he circulated scripts for callers to use to trick victims.

Weatherspoon contends that the district court clearly erred in applying the enhancement. According to him, the scheme was "a straightforward phone scam that used technology so simple it could be run from inside a prison." He also says that the information he and his coconspirators obtained was publicly available and didn't require particular "savvy or sophisticated methods to track down." And he observes that the scheme didn't involve the use of forged or false documents or Ponzi-type payments—markers of sophistication we've identified before. *See id.* at 918.

We nonetheless believe that the scheme was sufficiently sophisticated to trigger the enhancement for the reasons the district court identified, and so we discern no clear error here. The court discussed some of the same points Weatherspoon now makes, including the wide availability of the spoofing technology the coconspirators employed. As the district court explained, though, the phone-number spoofing was "just one small piece" of the conspiracy, and the overall scheme's sophistication exceeded what could be considered a garden-variety phone scam. The court correctly observed that, unlike a garden-variety phone scam, the scam here involved a "platoon" of people who gathered information on the victims ahead of time, used that information and technology to trick them into believing they needed to pay money to avoid arrest, and met them to receive payment. The scheme involved repetitive and highly coordinated conduct that took place around the country for over two years and

duped dozens of victims out of hundreds of thousands of dollars. We've upheld application of the enhancement in analogous cases, *see, e.g.*, *United States v. Mitchell*, 914 F.3d 581, 586–87 (8th Cir. 2019); *United States v. Fiorito*, 640 F.3d 338, 351 (8th Cir. 2011); *see also United States v. Rosen*, 782 F. App'x 498, 500 (8th Cir. 2019) (unpublished per curiam), and have no difficulty doing so here, even if no one step in the scheme was particularly complicated. *See Meadows*, 866 F.3d at 917.

Weatherspoon also asserts that the court shouldn't have applied the enhancement because the court had already applied a two-level enhancement under USSG § 2B1.1(b)(9)(A) for impersonating police officers. According to Weatherspoon, application of both enhancements amounts to double counting. We don't see it that way. The district court applied the enhancement for sophisticated means for many reasons, not just because callers misrepresented that they were police officers. That was only one aspect of a scheme whose sophistication warranted an incremental increase in the recommended punishment.

The district court's Guidelines calculation also included a four-level enhancement because Weatherspoon "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *See* USSG § 3B1.1(a). "The district court's determination of a participant's role in the offense is a factual finding that we review for clear error." *United States v. Willis*, 168 F.4th 1119, 1121 (8th Cir. 2026) (per curiam). The court explained that Weatherspoon was "the conductor of this fraud" who directed some of his coconspirators' activities. Indeed, an FBI agent testified at the sentencing hearing that his investigation had revealed that Weatherspoon was the "hub" of the conspiracy, sent maps and other information to coconspirators outside the prison, and directed them where to travel. According to the agent and text messages that investigators recovered, coconspirators also came to Weatherspoon for clarification about their cuts of the proceeds and for reimbursement of expenses, and he managed the various accounts used to move

money. The district court credited the agent's testimony, and Weatherspoon suggests no reason for concluding that the agent was not credible. And we don't see one.

Weatherspoon further contends that the court mistakenly determined that he was an organizer or leader because the FBI agent testified that every conspirator's role was essential and that the conspiracy wouldn't have worked without someone fulfilling each role. Weatherspoon asks, "How can [he] be the 'leader' of a conspiracy when each other person's role was equally as important and essential to its functioning?" The question misses the mark. The court didn't apply the enhancement because Weatherspoon was the most important conspirator; it applied it because he was an organizer or leader of the conspiracy. Weatherspoon also points out that the agent testified that one or two conspirators were above Weatherspoon in the conspiracy's hierarchy. The enhancement isn't reserved, though, for the conspiracy's highest ranking participants. By its terms it applies to "an" organizer or leader, not just to "the" organizer or leader. *See* USSG § 3B1.1(a). And as the commentary to the Guidelines explains, more than one person may qualify as a leader or organizer in the conspiracy. *See id.* cmt. n.4. Finally, Weatherspoon says that there's no evidence he directed or made decisions for other conspirators. But the government presented evidence at the sentencing hearing to the contrary, and undisputed portions of the presentence investigation report, which the district court may rely on, *see United States v. Ellis*, 129 F.4th 1075, 1081 (8th Cir. 2025), detailed how Weatherspoon directed coconspirators. So we reject the challenge to the application of the role enhancement.

For his final challenge on appeal, Weatherspoon says that the criminal history category that he fell into for purposes of calculating his recommended sentencing range was too high because it substantially over-represented the seriousness of his criminal history or the likelihood he would commit other crimes. He brought this argument to the district court's attention by moving for a downward departure under USSG § 4A1.3(b)(1) (2024), but the district court denied the motion. That

determination is unreviewable except in circumstances not present here. *See United States v. Sawatzky*, 994 F.3d 919, 926 (8th Cir. 2021). We can, however, look to see whether the court imposed a substantively unreasonable sentence on Weatherspoon based on a criminal history that was over-represented, *see id.*, which is what Weatherspoon asks us to do. We review the substantive reasonableness of the court's sentence under a deferential abuse-of-discretion standard. *See United States v. Starr*, 111 F.4th 877, 878 (8th Cir. 2024).

In imposing a sentence at the bottom of the recommended sentencing range, the district court amply discussed the relevant sentencing criteria found in 18 U.S.C. § 3553(a). It also carefully considered the argument that Weatherspoon's criminal history was substantially over-represented. For example, it granted that he hadn't fired a gun that led to some previous convictions or acted as the aggressor in another incident. But, the court observed, he had twelve felony convictions by the age of 26, including a number of serious ones. Some of these convictions, moreover, including convictions for aggravated assault, did not contribute to his criminal history score. The court also noted that Weatherspoon continued to commit crimes, including the present offense, while he was incarcerated, indicating "that he's been undeterred by law enforcement's intervention" and "poses a danger to the community." We perceive no abuse of discretion in the court's take on Weatherspoon's criminal history, so he has failed to rebut the presumption that his Guidelines sentence is reasonable. *See United States v. Cosen*, 965 F.3d 929, 932 (8th Cir. 2020).

Affirmed.

_____